1 | Richard W. Pierce, Law Office, LLC
P.O. Box 503514
2 | Saipan, MP 96950-3514
Telephone:  (670) 235-3425
3 | Facsimile:   (670) 235-3427
Attorney for Defendant Seahorse Inc. Saipan
4 |

5 |

6 |                    IN THE UNITED STATES DISTRICT COURT
                                         FOR THE
7 |                        NORTHERN MARIANA ISLANDS

8 |                                                  )                    CIVIL CASE NO.  07-0033
                                                        )
9 | LI FENFEN,                                   )
                                                        )              **SEAHORSE, INC. SAIPAN**
10|                           Plaintiff,         )
                                                        )              **RESPONSE TO ORDER OF**
11|          vs.                                   )
                                                        )                  **MARCH 25, 2008**
12| SEAHORSE INC. SAIPAN,          )
                                                        )
13|                           Defendant.       )
                                                        )
14|

15|          Seahorse Inc. Saipan responds to the Court's Order of March 25, 2008 with the

16| following points and authorities:

17|

18| 1.       This case concerns an injury occurring in relation to the operation of a jet ski in the

19| Saipan lagoon.    *See* Complaint, ¶ 7 (drove the jet ski out into the lagoon).   As such,

20| Plaintiff's claims are within the admiralty and maritime jurisdiction of this Court. *See* 46

21| USC § 30503(a) ("The admiralty and maritime jurisdiction of the United States extends to
22|
and includes cases of injury or damage, to person or property, caused by a vessel on
23|
24| navigable waters, even though the injury or damage is done or consummated on land");

25| *Boone v. United States*, 944 F.2d 1489, 1493 (9th Cir. 1991) (waters "are navigable in fact
26|
when they are used, or are susceptible of being used, in their ordinary condition");
27|
28| *Taghadomi v. United States*,  401 F.3d 1080, 1087 (9th Cir. 2005) ("virtually every activity

-1-

involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction") (citation omitted); *Price v. Price*, 929 F.2d 131, 136 (4th Cir. 1991) (navigation of a vessel is a fundamental maritime activity).

2.     A jet ski, also called a personal water craft, is a vessel within the Limitation of Liability Act, 46 USC §§ 30503 *et seq.. Keys Jet Ski, Inc. v. Kays,* 893 F.2d 1225, 1230 (11th Cir. 1990) (statute formerly at 46 U.S.C.App. §§ 181-188); *In the Matter of the Complaint of Bay Runner Rentals*, 113 F.Supp.2d 795 (D.Md. 2000), and cases cited therein. *Matter of Hechinger,* 890 F.2d 202, 206 (9th Cir.1989) (pleasure craft within Limitation of Liability Act), *cert. denied*, 498 U.S. 848 (1990).

3.     The Limitation Act should be given a broad construction in order to achieve Congress' purpose: to induce and encourage investment in shipping.  *Admiral Towing Co. v. Woolen*, 290 F.2d 641, 645 (9th Cir. 1961).  *See* Complaint ¶ 4 (Seahorse Inc. Saipan operates a commercial jet ski business).

4.     In this Limitation of Liability proceeding, Li Fenfen has the burden of proving the negligent act or omission that led to her maritime injury and that the defendant is liable.  If no liability is found to exist, the matter ends.  *Northern Fishing & Trading Co., Inc. v. Grabowski*, 477 F.2d 1267, 1272 (9th Cir. 1973), *cert. denied,* 414 U.S. 1079 (1973).

5.     A reasonable duty of care is owed to those aboard the ship who are not crew members. *In re Catalina Cruises, Inc*. 137 F.3d 1422, 1425 (9th Cir. 1998).

6.      Liability depends upon traditional rules of proximate causation.  *See Crawford v.*

*Indian Towing Co.*, 240 F.2d 308 (5th Cir.1957) ("Where, as here, an act is negligent, but

is not the proximate cause of the injury, it is merely a condition. As such it is not the basis

of liability"); *Am. River Trans. Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir.1998)

("To be sure, the presence of the barges in this case was a but-for cause of the allision....

But in admiralty, the 'fault which produces liability must be a contributory and proximate

cause of the collision, and not merely fault in the abstract'") (citation omitted).[1]

7.      If liability is found, and was not occasioned or incurred with "privity or knowledge"

of the shipowner, the limitation of liability is decreed.  *Id.*; *In re Complaint of Morning*

*Star Cruises, Inc.*, 2006 WL 2474070, 3 (D. Ha. 2006) ("Claimants have the initial burden

of proving negligence or unseaworthiness; once established, the burden then shifts to the

vessel's owner to prove lack of privity or knowledge") (citations omitted)); *Keys Jet Ski,*

*Inc. v. Kays*,  893 F.2d 1225, 1230 (11th Cir. 1990) (same).

8.      "As used in the Act, privity means 'some fault or neglect in which the owner

personally participates,' and knowledge means 'some personal cognizance, or means of

knowledge, of which the owner is bound to avail himself'" that caused the loss.  *Wiley v.*

*Hobbs*, 71 F.2d 889, 894 (9th Cir.1934) (citation omitted); *Petition of Canadian Pac. Ry.*

---

[1]      To the extent unseaworthiness becomes an issue, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness. *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

*Co.*, 278 F. 180, 188 (9th Cir. 1921) ("Privity or knowledge, as used in the statute, imports actual knowledge causing or contributing to the loss or knowledge, or means of knowledge of a condition of things likely to produce or contribute to the loss without adopting proper means to prevent it"); *Hellenic Lines, Ltd. v. Prudential Lines, Inc.,* 813 F.2d 634, 638 (4th Cir. 1987) ("Privity and knowledge, as used in this statute, have been construed to indicate that a shipowner knew or should have known that a certain condition existed"). The aim of the Limitation Act is to relieve the owner of imputed negligence which in the law of torts arises from the relationship of employer and employee. The owner remains liable for any violation of an owner's duties. *The Pege*en, 14 F. Supp. 748, 752 (C.D. Cal. 1936).

9.      Because Seahorse Inc. Saipan is a corporation, the "knowledge" requirement refers to the knowledge of the executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred. *See Coryell v. Phipps*, 317 U.S. 406, 410, 63 S. Ct. 291, 293 (1943).

10.      According to the complainant, the speed of the vessel caused the incident that resulted in her injury. Complaint ¶9 ("Defendant's employee did not slow down, and instead continued driving the jet-ski at an excessive and unsafe rate of speed").

11.      The speed of a vessel is an attribute of its navigation. *See generally Union Oil Co. of California v. San Jacinto*, 409 U.S. 140, 143, 93 S. Ct. 368, 371 (1972); *May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft*, 290 U.S. 333, 340, 54 S. Ct. 162, 163 (1933) ("her navigation at this point was unskillful and negligent, in that she was

driven at too high a speed"); *The Silver Palm*, 94 F2d. 754, ___ (9th Cir. 1937) ("One of the very long-established principles of law in maritime navigation is that a vessel shall not proceed in a fog at a speed at which she cannot be stopped dead in the water in one-half the visibility before her").

12.   Mistakes of navigation are generally not imputed to the owner for purposes of privity and knowledge. *Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 813 F.2d 634, 638 (4th Cir. 1987); *Petition of Kristie Leigh Enterprises, Inc.*, 72 F.3d 479, 482 (5th Cir. 1996) (an owner may rely on the navigational expertise of a master); *Admiral Towing Co. v. Woolen*,  290 F.2d 641, 648 (9th Cir. 1961) ("To impute the master's mistake to the shipowner in such a situation simply because the master has been given broad and unlimited agency powers over the operation and maintenance of the vessel, would be to rob the shipowner of just that protection which the Limitation Act was apparently designed to afford him: immunization from instantaneous negligence on the part of the master at sea, negligent behavior over which the shipowner could not possibly exercise control").

13.   Any assumption or negligent act or omission by Li Fenfen that proximately caused her injuries reduces her damages.  *See St. Hilaire Moye v. Henderson*,  496 F.2d 973, 982 (8th Cir.) ("It is the responsibility of the trial judge as factfinder to assess the facts and apportion negligence among the parties as he deems proper under the doctrine of comparative negligence, which is applied in admiralty. … . Judge Henley apportioned 25% of the total negligence to the plaintiff and reduced her judgment accordingly), *cert. denied*, 419 U.S. 884, 95 S. Ct. 151, 42 L.Ed.2d 125 (1974); *Nygren v. American Boat Cartage, Inc.*

1    290 F.2d 547, 548 (2d Cir. 1961) ('Assumption of the risk' is a phrase of shifting meaning and is

2    here being used to indicate a form of contributory negligence, and therefore would not bar

3    recovery but only reduce damages); *Petitt v. Celebrity Cruises, Inc.*, 1999 WL 436423, 2

4    (S.D.N.Y. 1999) (assumption of risk, under the doctrine of comparative fault, is also a valid

5    defense to plaintiffs' claims in this action).

6

7        Respectfully submitted this April 11, 2008.

8
                        RICHARD W. PIERCE LAW OFFICE, LLC
9

10        _____/s/_____
                        Richard W. Pierce
11                      Attorney for Seahorse Inc. Saipan

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-6-