1

**O'CONNOR BERMAN DOTTS & BANES**
**Second Floor, Nauru Building**
**1 Nauru Loop**
**Susupe, Saipan, CNMI**
**Mail: PO Box 50-1969 Saipan MP 96950**
**Phone: 234-5684**
**Fax: 234-5683**
**E-mail: attorneys@saipan.com**

**Attorneys for Plaintiff**

**IN THE DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| LI FENFEN,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SEAHORSE INC. SAIPAN,<br><br>                    Defendants. | Civ. No. 07-0033<br><br>**PLAINTIFF'S**<br>**RESPONSIVE**<br>**MEMORANDUM** |

## INTRODUCTION

Plaintiff does not agree that this case falls within the terms of the Limitation of Liability Act,

46 U.S.C. § 30501 *et seq.,* because the jet-ski on which she was injured was not a "seagoing vessel"

within the meaning of the Act.  In addition, most of her claim (though not all) inherently implicates

Defendant's privity and knowledge, and falls outside the Act for that reason as well.  If and to the

extent the Act applies, however, Plaintiff agrees that the Court's and Defendant's summary of the

applicable law is generally correct.

## ARGUMENT

The scope of the Act is set forth in 46 U.S.C. § 30502 ("Application") as follows:

> Except as otherwise provided, this chapter (except section 30503) applies to
> *seagoing vessels* and vessels used on lakes or rivers or in inland navigation,
> including canal boats, barges, and lighters.

46 U.S.C. § 30502 (emphasis added).  The meaning and scope of the term "vessel," as used in other

subsequent sections of the Act, including 46 U.S.C. § 30505(a), which limits the liability of the

owner of "a vessel" to "the value of the vessel and pending freight," is necessarily controlled by § 30502, which establishes the overall parameters of the entire Act's application. In other words, a vessel is a "vessel" within the meaning of 46 U.S.C. § 30505(a) only if it is a seagoing vessel, or a vessel "used on lakes or rivers or in inland navigation," as provided in 46 U.S.C. § 30502.[1]  In addition, the burden of establishing that the vessel falls within the parameters of the Act is on the party invoking the limitation of liability:

> The petitioner, having invoked the provisions of law for the purpose of limiting its liability, necessarily has assumed the burden of proving that it comes within such provisions.  To be more explicit, the petitioner must satisfy the court, in order that its liability shall not exceed the value of the barges, that . . . the said barges were "vessels used on lakes or rivers or in inland navigation."

Petition of Diamond Coal & Coke Co., 297 F. 238, 239 (W.D.Pa. 1921), aff'd 297 F. 246 (3rd Cir. 1921) (quoting 46 U.S.C. Appx. § 188 (now 46 U.S.C. § 30502)).[2]


Seahorse cannot meet that burden in this case.  The jet-ski at issue was undisputedly not used on any lake, river, or in inland navigation.  The Act can therefore apply to it only if it is a "seagoing vessel."  However, a "seagoing vessel" is a vessel which "does, or is intended to, navigate in the seas beyond the Boundary Line in the regular course of its operations."  Talbot Big Foot, Inc. v. Boudreaux, 854 F.2d 758, 761 (5th Cir. 1988).

These operations may in fact proceed on either side of the Boundary Line; but the

---

[1]

See generally Grays Landing Ferry Co. v. Stone, 46 F.2d 394, 395 & n.1 (3rd Cir. 1931) (determining the availability of the limitation of liability (now 46 U.S.C. § 30505(a), then 46 U.S.C. Appx. § 183)  based on an analysis of whether the vessel fell within the terms of 46 U.S.C. § 30502 (then 46 U.S.C. Appx. § 188)); The Trim Too, 39 F.Supp. 271, 273 (D.Mass. 1941) (noting that "[s]ection 188 of Title 46 U.S.C.A. [now 46 U.S.C. § 30502] provides that the provisions of sections 183 [now 46 U.S.C. § 30505(a)] and 189 of the Title shall apply to all sea-going vessels;" finding that the vessel in question was a seagoing vessel, and that the limitation of liability was therefore available).

[2]

The former statutory citations are given parenthetically here and elsewhere in this brief, because they are the citations used in all but the most recent case law, the Shipping Code having been reorganized into its current arrangement only in 2006.

court must find that, considering the design, function, purpose, and capabilities of the vessel, it will normally be expected to engage in substantial operations beyond he nautical boundary.

Id. at 761-62.

A jet-ski is not a "seagoing vessel." It is a small, shore-based recreational craft, capable of carrying at most two people at a time. On Saipan, it rarely if ever leaves the lagoon. It certainly is not normally expected to engage in substantial operations beyond the nautical boundary, regardless of whether the boundary is deemed to be the traditional one marine league (three miles) from shore, or the twelve miles claimed since Presidential Proclamation No. 5928 in 1988. *See generally* In Re Air Crash Off Long Island, N.Y., 209 F.3d 200 (2nd Cir. 2000) (discussing this change). As such, it is not a "seagoing vessel," and is thus is not within the scope of the Limitation of Liability Act.

It is true that the Eleventh Circuit, in Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225 (11th Cir. 1990), found the Act applicable to jet skis.[3] The court in that case, however, did not take proper account of 46 U.S.C. § 30502 (then 46 U.S.C. Appx. § 188), particularly the "seagoing vessel" requirement. The Keys Jet Ski court acknowledged that "seagoing vessel" and the language following it had been added to the statute by amendment in 1886:

> [i]n 1886, Congress amended the act to extend its application to "all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal-boats, barges, and lighters."

Id. at 1228.[4] However, the court did not analyze or focus on this language, observing only that:

---

[3]

Some other courts have also so held, but have done so simply on the authority of Keys Jet Ski, without attempting an independent analysis. *See, e.g.,* Waggoner v. Nags Head Water Sports, Inc., 1998 WL 163811 at *5 (4th Cir. 1998) (unpublished decision) (citing Keys Jet Ski); In Re Bay Runner Rentals, 113 F.Supp.2d 795, 798 (D.Md. 2000) (citing Keys Jet Ski and Waggoner). *But see* In Re Roffe, 724 F.Supp. 9, 10 (D.P.R. 1989) (holding that a Yamaha Wave Jammer was not a "vessel," and not within the scope of limitation of liability act).

[4]

*See also, e.g.*, Charles Nelson Co. v. Curtis, 1 F.2d 774, 775 (9th Cir. 1924) ("The act was

3

one district court stated that "the evident purpose of the amendment was to make the statute applicable to all vessels, irrespective of the purpose to which they are put."

Id. (quoting In Re Liebler, 19 F.Supp. 829, 832 (W.D.N.Y. 1937). The Keys Jet Ski court's conclusion that the 46 U.S.C. § 30502 covers jet skis is thus based solely on this quotation from Liebler. However, the court displays no apparent recognition of the fact that the vessel in Liebler had been used, not in the sea, but in *Lake Erie*. *See* Liebler, 19 F.Supp. at 830 ("at a location in Lake Erie known herein as Wanakah Beach, situated in comparative proximity to the City of Buffalo, in this Western District of New York"). In that context, of course, the question of whether or not the vessel is "seagoing" under the first prong of 46 U.S.C. § 30502 never arises, and the Liebler court cannot be considered to have decided, or even considered, that question. Instead, the vessel in Liebler clearly falls under the second prong of the statute – "all vessels used on lakes or rivers or in inland navigation." *Within that context*, the Liebler court's interpretation of the 1886 amendment as making the statute "applicable to all vessels, irrespective of the purpose to which they are put" is perfectly correct.[5] But that was not the context faced by the court in Keys Jet Ski. The Keys Jet Ski court basically took the Liebler conclusion that the statute is applicable to every craft in the lake, and transposed that conclusion to the sea, thus overlooking the statutory term "seagoing," and effectively reading it out of the statute altogether. This Court should not fall into the same error.

Seahorse may object that Plaintiff's reading of the statute would result in the anomalous situation that a jet ski used on a lake would be covered by the Act, while a jet ski used in the Saipan

_____

further amended by the Act of June 19, 1886 . . . so as to extend the provisions of section 18 of the act of 1884 to all seagoing vessels.").

[5]

Even so, it was later rejected by the very court that has decided it, with pointed criticism for having cited "neither case law nor legislative history" in support of its conclusion. In Re Myers, 721 F.Supp. 39, 41 (W.D.N.Y. 1989). To the extent it was correct, therefore, it was essentially correct by accident – another reason to give it little weight.

4

lagoon would not be. That is true. However, it has become a commonplace that the Limitation of Liability Act will be applied according to its literal language even when the result will be anomalous. Indeed, the Act as a whole has been called anomalous, and has been severely criticized for the harsh and drastic results it produces. *See, e.g.*, <u>Keys Jet Ski</u>, <u>supra</u>, 893 F.3d at 1228 (noting that "recent cases have criticized the Limitation Act as 'hopelessly anachronistic,'" and have acknowledged that its application "could produce 'drastic' results") (citing cases); <u>Esta Later Charters, Inc. v. Ignacio</u>, 875 F.2d 234, 238-39 (9th Cir. 1989) (decrying "the harshness of the rule," and describing the Act as "[m]isshapen from the start, the subject of later incrustations, arthritic with age"). In particular, it is universally agreed that the original and intended purpose of the Act – to support and foster the growth of commercial shipping – is not served by applying it to pleasure craft. *See, e.g.*, <u>In Re Young</u>, 872 F.2d 176, 177 (6th Cir. 1989) ("Since there is common agreement that the original purpose of the Limitations Act was to give protection to our then fledgling maritime industry, we understand the reasoning of those courts which have found the application of the Act to pleasure boats to be inappropriate."). Indeed, there was a strong trend in the 1980's among the district courts to refuse to apply it to such craft. *See, e.g.*, <u>Estate of Lewis</u>, 683 F.Supp. 217, 220 (N.D.Cal. 1987) ("The recent trend among those district courts which have faced the issue, has been to hold that the Limitation Act does not apply to pleasure vessels."); <u>In Re Roffe</u>, 724 F.Supp. 9, 10 (D.P.R. 1989) (same), and cases cited. Since then, however, courts have gradually come around to the view that the literal language of the Act requires its application to pleasure craft, and it will be so applied, however anomalous the application or unjust the result, with the remedy left to Congress. *See, e.g.*, <u>Keys Jet Ski</u>, <u>supra</u>, 893 F.2d at 1229 ("While we might agree in this case with the district court that extension of the Limitation Act to pleasure craft such as jet skis in inconsistent with the historical purposes of the Act, restriction of its applicability requires congressional action."); <u>In Re Young</u>, 872 F.2d 176, 178 (6th Cir. 1989) ("resist[ing] the urge to judicially legislate

a solution"); <u>In Re Hechinger</u>, 890 F.2d 202, 206 (9th Cir. 1989) (following <u>Young</u>).<sup>6</sup>

If, therefore, the literal language of the Act will be applied even in defiance of the original legislative purpose, it would be doubly anomalous to *refuse* to apply it in a situation where doing so would, in that particular case, actually produce a result better in accord with the legislative purpose. Indeed, the Ninth Circuit has held, in light of the various deficiencies of the Act, including the "absurdly small amount compared to the damages" that can result from its application, that it will be construed against such results wherever its language does not positively require them:

> We are, of course, bound to follow the statute if its purport is clear.  But where, as here, we are asked to select between equally plausible interpretations, it is appropriate to consider the effects on the parties involved.  We choose the interpretation that avoids a patently unjust result.
> . . .
> The Liability Act provides shipowners a generous measure of protection not available to any other enterprise in our society.  Many have suggested that the Act, a relic of an earlier era, provides protections that are neither warranted nor consistent with current reality. . . . With the availability of incorporation, insurance, and other devices to protect shipowners against major disasters, the Liability Act seems oddly out of place in the modern economy; its application could well lead to wholly unexpected and harsh results.  Wee see no plausible reason for adopting an interpretation of the Act that will exacerbate these consequences.

<u>Esta Later Charters, Inc. v. Ignacio</u>, 875 F.2d 234, 238-39 (9th Cir. 1989) (citations and footnotes omitted). *See also*, *e.g.*, <u>The A.C. Dodge, Inc.</u>, 282 F.2d 86, 89 (2nd Cir. 1960) ("Ambiguous language in statutory provisions relating to limitation of liability should be resolved in favor of interpretations increasing the instances where full recoveries from the limiting vessel are possible."); <u>The Santa Rosa</u>, 249 F. 160, 161 (N.D.Cal. 1918) ("These statutes are, of course, to be enforced in

---

<sup>6</sup>

The question of whether the Act applies to "pleasure craft" (a term and concept found nowhere in the statute, but only inferred from the legislative history to be outside its scope) is distinct from the question in this case, which is whether it applies to vessels which are neither seagoing, nor used in lakes, rivers, or in inland navigation (the actual statutory language).  That question did not arise in <u>Young</u>, where (as in <u>Liebler</u>) the boat was used on Lake Erie.  Nor did it arise in <u>Hechinger</u>, where there could be no dispute that the vessel in that case – a 49-foot trawler sailing from Los Angeles to San Francisco – was "seagoing."  It arose in <u>Keys Jet Ski</u>, but the court there did not perceive it.  <u>Keys Jet Ski</u> answered the "pleasure craft" question correctly, but unfortunately that was not the correct question.

such spirit and with such liberality as will effect their purpose – the encouragement of shipbuilding and the employment of ships in commerce. But such liberality of enforcement should not be carried to an extent that will deprive . . . passengers of that degree of care on the part of those owning and operating ships which their safety demands and to which they are entitled.").

Finally, even if the Court determines the jet ski in this case to be within the scope of the Limitation Act, the Act still cannot apply to most of Plaintiff's claim, because most of the issues raised in the Complaint inherently implicate Seahorse's privity and knowledge, and thus, if the acts she alleges are true at all, they cannot have happened "without the privity or knowledge of the owner," as required for limitation of liability under 46 U.S.C. § 30505(b). Plaintiff sets out her claim for negligence against Seahorse in the following terms:

> Defendant breached its duty to Plaintiff by, *inter alia*, allowing incompetent and unauthorized personnel to operate its jet-skis, and failing to properly train and supervise its personnel in the safe operation of jet-skis. Defendant is also liable to Plaintiff for the negligence of its employee under the principle of *respondeat superior*.

Complaint at ¶ 14. If the Limitations Act applies, it can apply only to the last sentence of this allegation, the issue there being whether the employee's negligence was with or without the "privity or knowledge of the owner." 46 U.S.C. § 30505(b). However, the other wrongful conduct of the owner alleged – negligent entrustment, supervision and training – is conduct of a type that is necessarily within the owner's privity and knowledge. *See, e.g.,* In Re Ruiz, 494 F.Supp.2d 1339, 1341-42 (S.D.Fla. 2007) (holding that, if the owner was negligent in entrustment or supervision, his actions "would necessarily be within his 'privity or knowledge' and no limitation of liability would be available"); Joyce v. Joyce, 975 F.2d 379, 385 (7th Cir. 1992) ("[I]f a shipowner knows enough to be liable for negligent entrustment, he knows too much to be eligible for limited liability under the Act."); Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d 1060, 1064, 1066 (11th Cir. 1996) (holding that "privity or knowledge" issue may be decided before liability in situation where it is "impossible under any set of circumstances for the vessel owner to demonstrate the absence of

privy or knowledge," but that this does not extend to a situation where the owner could be "vicariously liable under principles of *respondeat superior*.").  As such, Plaintiff's negligence claims other than those based on *respondeat superior* are not subject to limitation under the Act.[7]

## CONCLUSION

For the foregoing reasons, the Limitation of Liability Act does not apply to Plaintiff's claim in this matter; or, if it does apply, it applies only to her claim based upon *respondeat superior* employer liability.  Within that limited context, Plaintiff is in general agreement with the principles of law stated by the Court in its March 25 Order, and by Defendant in its April 11 brief.[8]

Respectfully submitted this 25th day of April, 2008.


O'CONNOR BERMAN DOTTS & BANES
Attorneys for Plaintiff



By:_____/s/_____
                    Joseph E. Horey

---

[7]

Plaintiff's claims under the Consumer Protection Act also alleges actions and representations of a type that would, if true, necessarily be within the privity or knowledge of Seahorse.

[8]

Plaintiff disagrees, of course, with paragraphs 2 and 3 of Defendant's brief, for the reasons hereinabove.

Plaintiff also believes that Defendant, in paragraphs 11 and 12, is too ready to attribute mistakes of navigation solely to the pilot, and thus to exonerate the owner.  *See* The Santa Rosa, 249 F. 160, 162 (N.D.Cal. 1918) (noting that risky navigational practices are often undertaken by masters of vessels "with the knowledge and consent, if not under the express orders" of their ships' owners, and that a court therefore "should not listen with over-eager ears to the excuses offered for the loss of vessels which should never have occurred, or to the general disclaimer of responsibility for wrecks that could have so easily been avoided").

1  *3414-01-080424-PL limitation of liability.wpd*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28