FILED
Clerk
District Court

JUL 3 1 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1 | Richard W. Pierce, Law Office, LLC
P.O. Box 503514
2 | Saipan, MP 96950-3514
Telephone:   (670) 235-3425
3 | Facsimile:   (670) 235-3427
Attorney for Defendant Seahorse Inc. Saipan
4

5

6               IN THE UNITED STATES DISTRICT COURT
                         FOR THE
7               NORTHERN MARIANA ISLANDS

8                                          )          CIVIL CASE NO.  07-0033
9 | LI FENFEN,                             )
                                           )          **OPPOSITION TO PLAINTIFF'S**
10 |                      Plaintiff,        )          **MOTION TO DE-BIFURCATE TRIAL**
                                           )          **AND CROSS MOTION TO DISMISS**
11 |        vs.                            )          **SECOND CLAIM FOR RELIEF**
                                           )
12 | SEAHORSE INC. SAIPAN,                  )          **TIME:    8:30 A.M.**
                                           )
13 |                      Defendant.        )          **DATE:    AUG. 28, 2008**
                                           )
14 | ─────────────────────────────────────           **JUDGE:  MUNSON**

15

16

17        Seahorse Inc. Saipan responds to Plaintiff's request for this Court to reconsider its

18 Order of May 2, 2008 and further requests the Court to grant judgment on the pleadings to

19 Seahorse on Plaintiff's Second Claim for Relief.

20

21                              Background

22

23        By order of March 25, 2008, the Court proposed a bifurcation of the issues in this

24 case, and directed the parties to submit memoranda on the subject.   The Court required the

25 parties to set out their issues of "controlling law."  Order at 2.[1]

26

27 ─────────────────
[1]      "IT IS ORDERED that defendant shall submit to the court by Friday, April 11, 2008, a
28 memorandum of law setting out what they believe to be the controlling law. Plaintiff shall have
until Friday, April 25, 2008, to respond with her own memorandum of controlling law."

1    Seahorse submitted a memorandum that generally supported the Court's proposal.

2    *See* Seahorse, Inc. Saipan Response to Order of March 25, 2008 (filed April 11, 2008).

3

4    The Plaintiff Li Fenfen submitted a memorandum that questioned the application of

5    the Limitation of Liability Act to a jet ski operating in the Saipan lagoon, but otherwise

6    "Plaintiff is in general agreement with the principles of law stated by the Court in its

7
     March 25 Order, and by Defendant in its April 11 brief."    Plaintiff's Responsive
8
9    Memorandum, at 8 (filed April 25, 2008).    The Plaintiff did not contest the Court's

10   bifurcation proposal, which provided for trial by the court:

11
          IT IS FURTHER ORDERED that a status conference will be held in this
12        matter on Friday, May 2, 2008, at 9:30 a.m. to discuss with the parties the
          court's proposal to bifurcate this matter. It is the court's intention to exercise
13        its discretion under Fed.R.Civ.P. 42(a) and order a separate trial for the
          limited purpose of resolving only defendant's Limitation of Liability Act
14        claim. In this separate trial, the parties will address and the court will
15        decide:

16        1. What acts of negligence, if any, caused the accident, and

17        2. Whether defendant had knowledge of the events that caused the accident.

18        …

19        If defendant cannot prove that it was without privity or knowledge of the
          negligent acts which caused the accident, it may not avail itself of the
20        Limitations of Liability Act and the lawsuit will continue to the damages
          phase.
21

22   March 25, 2008 Order at 2, 3-4.

23
          After the May 2 conference, the Court issued its revised scheduling order which
24
25   provides for the bifurcation.  *See* Case Management Scheduling Order Re: Negligence and

26   Privity, May 2, 2008.  It is that Order for which Plaintiff seeks re-consideration.

27

28

1      This response opposes the re-consideration and also requests the Court to rule in

2 Plaintiff's favor on the Second Claim for Relief, a claim under the CNMI's Consumer

3
Protection Act.  That claim conflicts with the maritime nature of the incident and cannot be
4
5 sustained.

6                                                  Argument

7

8 I.    Plaintiff Waived any Right to a Jury Trial

9      Plaintiff, and the defendant to the extent applicable, waived any right to a jury trial

10
by failing to contest and even agreeing with the Court's proposed order of a court trial.  *In*
11
12 *re City of Philadelphia Litigation*, 158 F.3d 723, 726 (3rd Cir. 1998) (A party waives his

13 right to a jury trial under Rule 39(a) not only by stipulation, but also by failing to object to

14
a court order); *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d
15
946, 949 (10th Cir. 1978) (waived in open court its right to a jury trial).  No formal waiver
16
17 is required.  Rule 39(a), F. R. Civ. P., has been interpreted broadly so as to encompass

18 orders entered by the court and not objected to; statements by the judge on the record that

19
are not objected to; and briefs arguing that the judge can decide certain matters as a legal
20
21 question.  *See Lovelace v. Dall*, 820 F.2d 223, 227 (7th Cir. 1987) (cases cited therein).  *See*

22 *generally White v. McGinnis,* 903 F.2d 699, 703 (9th Cir. 1990) (*en banc*) (eliminating

23 formalistic approach to Rule 39(a) waiver).

24
Not only did the Plaintiff specifically agree with the Court's proposed bifurcated
25
26 procedure with a court trial, the Plaintiff did not raise any objection to the scheduling order

27 within the 14 days usually allotted for re-consideration.  Instead, after liability discovery

28

1  under the bi-furcated procedure had been completed, the Plaintiff changed her tune as to

2  who should decide liability and privilege and knowledge.

3

4      Once waived, the waiver stands unless the Court grants relief for extraordinary

5  reasons.   Inadvertent or mistaken waivers do not entitle a litigant to relief under Rule

6  39(b).  *See, e.g., Zivkovic, 302 F.3d at 1086; Pac. Fisheries Corp. v. HIH Cas. & Gen. Ins.*

7  *Ltd.*, 239 F.3d 1000, 1002-03 (9th Cir. 2001); *Lewis v. Time Inc.*, 710 F.2d 549, 556-57

8  (9th Cir. 1983).   In order to grant relief, something beyond mere inadvertence must be

9

10  shown.  *Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir. 1976).

11

12      In her moving papers, Plaintiff has shown no reason, much less one beyond mere

13  advertence.  A change of mind with respect to what the law is and what fact finder she

14  might obtain more favorable relief does not equate to a circumstance more than "mere

15  inadvertence."  She intentionally took a path, and now thinks better of it.  That behavior

16  does not justify this Court's exercising its discretion in favor of her current views.

17

18  II.     The Court Has the Discretion in How to Structure the Trial

19

20      Even were Plaintiff entitled to a jury trial, she has not shown that the Court's

21  bifurcation deprives of her interest compared to the interest of the defendant in limiting its

22  liability.

23

24      For maritime claims, there has always been a tension between the Limitation Act

25  and the savings to suitor clause, 28 U.S.C. § 1331(1).[2]  *In Matter of Complaint of Boy*

26

27  _____

   [2]      "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
28  (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other
   remedies to which they are otherwise entitled."

*Scouts of America,* 1997 WL 68570, 2 (N.D.Cal. 1997).

The Limitation Act provides a framework for litigating all issues arising from a maritime incident; "[o]herwise the purpose of the Act, i.e., limitation of the owner's liability, might be frustrated." *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 151, 77 S. Ct. 1269, 1272 (U.S.).  In addition, a potential for claims for attorneys' fees or costs against a shipowner by a claimant "creates a multiple claimant situation necessitating a *concursus*." *Beiswenger Enterprises Corp. v. Carletta* , 86 F.3d 1032, 1040 (11th Cir. 1996) (citations omitted).  The Limitation Act permits the ship-owner to have all claims against him brought into concourse in an admiralty tribunal. *Maryland Cas. Co. v. Cushing,*  347 U.S. 409, 414, 74 S. Ct. 608, 611 (1954) (plurality).

On the other hand, the saving to suitor clause protects common law remedies, even jury trials, in the forum of claimants' choice. *In Matter of Complaint of Boy Scouts of America*, 1997 WL 68570, 2 (N.D.Cal.) (N.D. Cal. 1997).

The courts that have dealt with the tension between the two acts require the claimant seeking a jury trial prior to or concurrent with the limitation proceeding to enter into stipulations to protect the owner's statutory right to limit liability. *Anderson v. Nadon*, 360 F.2d 53, 57 (9th Cir. 1966) ("it is generally held that when there are a multiplicity of claims, and they exceed the limitation fund as asserted by the owner, the district court should adjudicate the entire case, restraining independent state damage actions"); *Newton v. Shipman*, 718 F.2d 959, 962 (9th Cir. 1983)  (a single "claimant must: (1) stipulate that the value of the limitation fund equals the combined value of the vessel and its cargo; (2) waive the right to claim res judicata based on any judgment rendered against the vessel

owner outside of the limitation proceedings; and (3) concede the district court's exclusive jurisdiction to determine limitation of liability issues"). Otherwise, while the limitation action is pending, there is no right to trial by jury. If and when limitation is denied, the Court can revisit the jury demand issues. *In re Ingram Barge Co.* 2006 WL 5377855, 1 (E.D.La. 2006)

How to proceed is discretionary with the Court. With the appropriate stipulations, the *Newton* court opined that it saw "no reason why both actions may not be tried at the same time-the Jones Act claim by a jury and the limitation issue by the court" or "stay the limitation proceeding and try the liability issue first, thus preserving the possibility that a jury will find no liability or award less than the limitation fund and thereby moot the limitation proceeding." *Supra*, 718 F.2d at 963-964 n. 5.

Here, Plaintiff has offered no stipulation with respect to the multiple claims, the value of the limitation fund, or the lack of *res judicata* effects by a jury, – that is, preserving for the Court the exclusive right to try the limitation issues. *See In re Complaint of Ross Island Sand & Gravel,* 226 F.3d 1015, 1017-1018 (9th Cir. 2000) ("Matson satisfied two of these requirements, namely, he waived the *res judicata* effects of any intervening state court judgment, and conceded the district court's exclusive jurisdiction over all questions concerning the right to limitation").[3]

---

[3]    "Claimants have stipulated that: (1) XPI has the right to litigate the issue of whether it is entitled to exoneration or limitation of liability under the Limitation Act in this court, and this Court has exclusive jurisdiction to determine said issues. ... . and further consent to waive the defense of issue preclusion with respect to all matters reserved for determination by this court." *In re X-Treme Parasail, Inc.*, 2006 WL 4701815, 3 (D.Hawai'I 2006).

The Plaintiff cites the *Fitzgerald* case for the proposition that it is entitled to a jury on the limitations issues, which is exaltedly the opposite to the stipulations required by the case law. In the *Fitzgerald* case, the Supreme Court fashioned controlling procedural rules for admiralty law and instructed District Courts in how to proceed under certain maritime claims that include a Jones Act claim that must be tried to a jury. *Fitzgerald v. U. S. Lines Co.,* 374 U.S. 16, 20-21, 83 S. Ct. 1646, 1650 (1963) (Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases. Article III of the Constitution vested in the federal courts jurisdiction over admiralty and maritime cases, and, since that time, the Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law. This Court has long recognized its power and responsibility in this area and has exercised that power where necessary to do so").[4] Thus, it is not surprising that in *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050 (9th Cir. 1997), the Court required a jury trial on four plaintiff claims, three of which allowed for jury trial. Although the Ninth Circuit reached the same result on a law counterclaim in *Wilmington Trust v. United States District Court for the District of Hawaii*, 934 F.2d 1026 (9th Cir. 1991), the split of authority on the issue shows that the case is confined to the circumstances. *Concordia Co., Inc. v. Panek*, 115 F.3d 67, 71 (1st Cir. 1997) (documenting split of authority whether plaintiff's choice to proceed in admiralty deprives

---

[4]    "Plaintiff argues that the Supreme Court's decision in *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) created a 'quasi-constitutional' right to a jury trial under the Seventh Amendment for Jones Act plaintiffs and defendants. The argument lacks merit. In *Fitzgerald,* the Court held that a plaintiff's Jones Act right to a jury trial also could extend to a plaintiff's non-Jones Act admiralty claims. The Court explained that while 'the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them.' *Id.* at 20, 83 S. Ct. at 1650." *Craig v. Atlantic Richfield Co.* 19 F.3d 472, 476 n. 2 (9th Cir. 1994).

1   defendants of law claims before a jury). As shown, the *Fitzgerald*, *Ghotra* and *Wilmington*

2   *Trust* cases have not impacted how the courts deal with the shipowner's right to an

3

4   admiralty limitation proceeding.

5       Courts have not followed the holding of *Doughty v. Nebel Towing, Inc.*, 270 F.

6   Supp. 957 (E.D. La. 1967), which is cited by Plaintiff for the proposition that *Fitzgerald*

7   requires a jury trial on the same issues of her claims that are also within the admiralty,

8

9   limitation proceeding. Other Louisiana courts have not followed it, and Plaintiff has not

10  cited to any circuit court that has adopted the ruling from the 1967 *Doughty* decision. *See*

11  *In re Ingram Barge Co.*, 2006 WL 5377855, 1 (E.D.La. 2006) (jury trials are generally not

12  available in limitation of liability actions; "if the limitation is denied, the claimants may

13

14  elect to proceed before a jury with other actions") (citations omitted); *Arnold v. Port*

15  *Arthur Towing Co.*, 1988 WL 44473, 1 (E.D.La. 1988) ("the motion of the defendant to

16  strike the plaintiff's jury demand is DENIED except insofar as the Court must decide all

17  factual issues affecting the defendant's defense of limitation of liability");

18

19      In conclusion, at this point, Plaintiff has not shown any compelling reason for this

20  Court to alter the procedure it adopted with the concurrence of the Plaintiff and the

21  Defendant. Were the Court to alter the procedure as requested by Plaintiff, Plaintiff will

22  be required to enter into stipulations to protect the limitation of liability.[5]

23

24

25

26

27  [5]     Seahorse notes that the CNMI Consumer Protection Act (Plaintiff's second claim for
        relief) did not exist at the time of the common law and Plaintiff would have no right to a jury trial
28  on the claim.

III.    Plaintiff's Second Claim for Relief Should be Decided in favor of Seahorse

Plaintiff's second claim is a CNMI law claim based upon the CNMI's Consumer Protection Act, 4 CMC ¶¶ 5101 *et seq,*.  She claims actual damages, liquidated damages and attorney's fee under Section 5112(a) of the Act.

This claim is antithetical to maritime law.    First, the CNMI's consumer protection Act is a hodgepodge of ill-defended behavioral requirements for landlubber merchants, all of which carry the rubric of "unfair competition."  *See* 4 CMC §§ 5104(h)[6] and 5105.  In order to prove an act of unfair competition, it is not necessary to show harm to a consumer or the presence of competition.  4 CMC § 5108.  Any person aggrieved is entitled to such legal or equitable relief as the court may order.  In addition to actual damages, the court shall award liquidated damages in an amount equal to the actual damages in cases of willful violations, and shall award costs and reasonable attorney's fees if the plaintiff prevails.  4 CMC § 5112.

In the context of a maritime incident, as here, federal courts that have considered consumer protection statutes or statutes with attorney fees consistently determine that the statutes conflict with general maritime law and are, therefore, preempted.  *See DeRossi v. Nat'l Loss Mgmt.,* 328 F.Supp.2d 283, 288-89 (D.Conn.2004) (concluding that admiralty law preempts a claim under the Connecticut Unfair Trade Practices Act because "the damages provisions ... regarding attorney's fees and punitive damages are not consistent with the standards established in admiralty law"); *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1321-23 (M.D.Fla.2002) (dismissing claim under the FDUTPA, in an admiralty

---

[6]    "Unfair competition" means an unlawful, unfair or fraudulent business practice and unfair, untrue or misleading advertising and any activity prohibited in 4 CMC § 5105.

action, for failure to sufficiently plead damages, and striking request for punitive damages and attorney's fees); *Norwalk Cove Marina, Inc. v. S/V Odysseus,* 90 F.Supp.2d 190, 192-93 (D.Conn.2000) (dismissing claim under the Connecticut Unfair Trade Practices Act, concluding that the statute conflicts with admiralty law because it "allows for the award of attorneys fees and punitive damages without meeting the standards established for such awards in admiralty law"), *aff'd,* 64 Fed.Appx. 319, 320 (2d Cir.2003); *Delta Marine, Inc. v. Whaley,* 813 F.Supp. 414, 416-17 (E.D.N.C.1993) (concluding that the North Carolina Unfair and Deceptive Trade Practices Act was preempted by admiralty law); *Geftman v. Boat Owners Ass'n of the United States,* No. C/A 2:02-1461-18, 2003 WL 23333312, at *1-5 (D.S.C. Dec. 2, 2003) (concluding that the South Carolina Unfair Trade Practices Act was preempted by admiralty law); *cf. also Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 363-67 (5th Cir.1995) (concluding that the Texas Deceptive Trade Practices Act was preempted by the Longshore and Harbor Workers' Compensation Act); *Southworth Mach. Co. v. F/V Corey Pride,* 994 F.2d 37, 40-42 (1st Cir.1993) (concluding that attorney's fees provision in the Massachusetts Consumer Protection Act could not be applied in the case because it was inconsistent with admiralty law); *Garan Inc. v. M/V Aivik,* 907 F.Supp. 397, 398-401 (S.D.Fla.1995) (concluding that the Florida offer-of-judgment statute was preempted by admiralty law because it permitted a party to recover attorney's fees); *Tarnawski v. Schenker, Inc.,* No. C02-5659 FDB, 2003 WL 22721987, at *4 (W.D.Wash. May 6, 2003) (concluding, *inter alia,* that the Washington Consumer Protection Act was preempted by the Carriage of Goods by Sea Act).

-10-

It is settled doctrine that a state law that conflicts with established maritime law or federal statute will not be given effect. *Churchill v. F/V Fjord*, 857 F.2d 571, 576 (9th Cir. 1988). "[T]he smooth flow of maritime commerce is promoted when all vessel operators are subject to the same duties and liabilities." *Id.* at 576, *quoting Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 676, 102 S.Ct. 2654, 2659 (1982).

Unlike the CNMI's Consumer Protection Statute, maritime law applies the "American Rule" as to attorney's fees. *Gradmann & Holler GmbH v. Continental Lines, S.A.*, 679 F.2d 272, 273-74 (1st Cir.1982). Therefore, the Court has discretion to award attorneys fees upon a showing that opposing counsel has commenced or conducted an action in bad faith, vexatiously, wantonly or for oppressive reasons. *See F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S. Ct. 2157, 40 L.Ed.2d 703 (1974). By contrast, the CNMI statute permits attorney fees merely for prevailing. 4 CMC § 5112.

For punitive damages, the CNMI Act permits liquidated damages in a set amount upon a showing of a *willful* act of unfair competition. Federal maritime law has no liquidated damages. However, under federal maritime law, punitive damages may be available for conduct that manifests reckless or callous disregard for the rights of others or for conduct which shows gross negligence or actual malice or criminal indifference. *Isham v. Padi Worldwide Corp.*, 2007 WL 2460776, 16 (D. Hawai'I 2007) (citation omitted). The evaluation is directed toward the intent or neglect of the defendant toward the purported victim; it is not an evaluation of unfairness or competition. *See Kahumoku v. Titan Maritime, LLC,* 486 F.Supp.2d 1144, 1153 (D. Hawai'I 2007) ("with gross

1  negligence, manifest recklessness, callous disregard, or criminal indifference to the

2  Plaintiff's safety or well-being").    Further, whether punitive damages are available to a

3  passenger remains in doubt.[7]

4

5      The CNMI Consumer Protection Act also conflicts with the maritime law

6  substantively.  Seahorse owes a duty of reasonable care to those aboard the vessel who are

7  not crew members.  *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625,

8  630, 79 S.Ct. 406, 409-10, 3 L.Ed.2d 550 (1959).  In *Kermarec*, the Supreme Court held

9

10  that "the owner of a ship in navigable waters owes to all who are on board for purposes not

11  inimical to his legitimate interests the duty of exercising reasonable care under the

12  circumstances of each case." *Id.* at 632, 79 S.Ct. at 410; *accord Morton v. De Oliveira*, 984

13  F.2d 289, 291 (9th Cir.), *cert. denied*, 510 U.S. 907, 114 S.Ct. 289, 126 L.Ed.2d 238

14

15  (1993).  Admittedly, here, the plaintiff rode on a Seahorse vessel, and Seahorse, therefore,

16  owed her a duty of reasonable care.

17

18      The CNMI statute does not concern itself with reasonable care or negligence within

19  the context of injuries aboard a vessel and proximate causation, which the CNMI statute

20  does not reference, but with unfair competition in a manner determined by the CNMI

21  legislature.  Localized *ad hoc* determinations do not contribute to the smooth flow of

22  maritime commerce with all vessel operators subject to the same duties and liabilities.

23

24      In conclusion, the Court should follow the lead of the other courts that have dealt

25  with the issue and find for Seahorse on the Second Cause of Action for failure to allege

26

27

28
---
[7]      *See Jameson v. Holland America Line-Westours, Inc.*, 2004 WL 1950369, 1 (W.D.Wash. 2004) ("not entirely clear that punitive damages are unavailable to a passenger alleging personal injury under maritime law").

1  any facts that would entitle it to relief. *See Sun Life Assur. Co. of Canada v. Ki*mble, 2007

2  WL 3313448, 3 (E.D.Cal. 2007) (claim not cognizable under ERISA), *quoting McGann v.*

3
   *Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996) ("A judgment on the pleadings is

4
5  properly granted when, taking all allegations in the pleading as true, the moving party is

6  entitled to judgment as a matter of law").

7
        Respectfully submitted this July 30, 2008.
8

9                              RICHARD W. PIERCE LAW OFFICE, LLC

10

11                             Richard W. Pierce

12                             Attorney for Seahorse Inc. Saipan

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-