O'CONNOR BERMAN DOTTS & BANES
Second Floor, Nauru Building
Marianas Business Plaza
Nauru Loop, Susupe, Saipan, CNMI
Mail: PO Box 50-1969 Saipan MP 96950
Phone: 234-5684
Fax: 234-5683
E-mail: attorneys@saipan.com

IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI FENFEN, ) | Civ. No. 07-0033 |
| ) | |
| Plaintiff, ) | OPPOSITION TO |
| ) | SEAHORSE'S CROSS-MOTION |
| vs. ) | TO DISMISS SECOND |
| ) | CLAIM FOR RELIEF |
| SEAHORSE INC. SAIPAN, ) | |
| ) | Date: August 28, 2008 |
| Defendant. ) | Time: 8:30 am |
| ) | |

## INTRODUCTION

Seahorse has moved to dismiss Plaintiff Li Fenfen's second cause of action, a claim under the CNMI Consumer Protection Act, on the ground that such a claim conflicts with maritime law, in that it allows a prevailing party to recover liquidated damages and attorney's fees. Seahorse's motion should be denied for the following reasons:

## ARGUMENT

Even in cases falling within the admiralty jurisdiction of the court, the "saving to suitors" clause of 28 U.S.C. § 1333(1) preserves remedies other than those of the admiralty law. These include:

> all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. It includes remedies *in pais*, as well as

Case 1:07-cv-00033   Document 24   Filed 08/14/2008   Page 2 of 6

> proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity, as well as those enforceable in a court of law.

Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 445 (2001) (quoting Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 123-4 (1924)). Therefore, "a plaintiff with an *in personam* maritime claim has three choices:"

> He may file suit in federal court under the federal court's admiralty jurisdiction, in federal court under diversity jurisdiction if the parties are diverse and the amount in controversy is satisfied, or in state court. The difference between these choices is mostly procedural; of greatest significance is that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is preserved for claims based in diversity or brought in state court. The same substantive law applies to the claim regardless of the forum, a type of "reverse-Erie" to ensure the uniform applicability of admiralty law.

Ghotra v. Bandila Shipping, Inc., 113 F.2d 1050, 1054-55 (9th Cir. 1997) (citations omitted).

In order to ensure the uniform applicability of admiralty law, state laws are pre-empted which "work[] material prejudice to the characteristic features of the general maritime law or interfere[] with the proper harmony and uniformity of that law in its international and interstate relations." American Dredging Co. v. Miller, 510 U.S. 443, 447 (1994) (quoting Southern Pacific Co. v. Jensen, 244 U.S. 205, 216 (1917)). However, "states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not *actually conflict* with federal law or *interfere* with the *uniform working* of the maritime legal system." Pacific Merchant Shipping Ass'n v Aubry, 918 F.2d 1409, 1422 (9th Cir. 1990) (emphasis in original). *See also* id. at 1424 ("The Constitution tolerates some disharmony in admiralty law. As discussed above, states may supplement admiralty law, and states' supplementation of admiralty law necessarily creates some discord in that law."). "[A] state law claim should not be dismissed simply because it would result in differing remedies for plaintiffs in different parts of

the country; such a claim is foreclosed only if the state law in question frustrates a fundamental tenet of admiralty law." Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1279 (1st Cir. 1993). "The mere existence of a difference between state and federal law does not dictate that the state law must yield." Hughes v. Foster Wheeler Co., 932 P.2d 784, 791 (Alaska 1997). *See generally, e.g.,* Yamaha Motor Corp v. Calhoun, 516 U.S. 199 (1996) (state wrongful death statute not pre-empted by admiralty law; damages in jet ski accident governed by state law).

A "characteristic feature" of the general maritime law, within the meaning of Jensen and American Dredging:

> refers only to a federal rule that either "originated in admiralty" or "has exclusive application there." Where a federal rule "is and has long been a doctrine of general application," a state's refusal to follow that rule does not "work 'material prejudice to [a] characteristic featur[e] of the general maritime law.' "

In re Exxon Valdez, 270 F.3d 1215, 1251 (9th Cir. 2001) (footnotes omitted) (citing Jensen and American Dredging). *See also* Paul v. All Alaskan Seafoods, Inc., 24 P.3d 447, 452 (Wash.App. 2001) ("A characteristic feature of general maritime law is one that originates in or has exclusive application in admiralty.") (citing American Dredging). By this standard, the "American Rule" as to attorney's fees cannot be considered a characteristic feature of maritime law, because it did not originate there, and it certainly does not have exclusive application there. On the contrary, it is of general application in virtually all federal and state courts.

The question of whether a state law unduly "interferes" with the "uniformity" of admiralty law is decided by means of a balancing test. In Re Exxon Valdez, supra, 270 F.3d at 1251 (citing Yamaha, supra). *See also, e.g.,* Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1424 (9th Cir. 1990) ("Whether Aubry's application of California's overtime provisions

unduly disrupts federal maritime harmony in violation of the Constitution depends on the balance of federal and state interests involved in application of the overtime provisions."). This balancing test tips in favor of the state law where the parties involved are in-state residents, and the maritime activity they engage in is merely coastal within the state:

> Most important, because the maritime employees involved in this action are California residents who work on vessels that operate exclusively off the California coast, application of the state's overtime law will not disrupt international or interstate commerce. Uniformity in maritime law is required "only where the essential features of an exclusive federal jurisdiction are involved." The minimal impact that Aubry's actions would have on international and interstate maritime commerce leads us to conclude that the "essential features" of exclusive federal jurisdiction are not unduly burdened in this case.

Id. at 1425 (quoting Benedict on Admiralty) (citations omitted). For the same reasons, there is no undue disruption of uniformity in this case.

Seahorse cites several cases for the contrary proposition that the unavailability of liquidated damages or attorney's fees is so fundamentally characteristic to admiralty law, or so interferes with the necessary uniformity of such law, as to categorically pre-empt the application of any state law which allows for those remedies. These cases, however, are not consistent with the Jensen-American Dredging standards for pre-emption as discussed above, and the better reasoned authority is to the contrary. The issue receives a particularly thorough and influential discussion in Robertson, *Court Awarded Attorneys Fees In Admiralty*, 27 Journal of Maritime Law and Commerce 507 (1996), which concludes that the courts holding that attorneys' fees are categorically unavailable in maritime law have "mistakenly [taken] the American rule--a general federal procedural rule--for a substantive rule of maritime law, and wrongly used that rule to displace state substantive law." Id. at 566. Robertson's reasoning was adopted by the Eleventh Circuit in All Underwriters v. Weisberg, 222 F.3d 1309 (11th Cir. 2000), which refused to strike

a demand for attorney's fees, finding there to be no established admiralty rule against their recovery:

> In reviewing the *Kenealy* decision, we, however, observe that the cases which underlie the court's rationale in *Kenealy* do not support the notion of an emerging federal rule of law relating to attorney's fees in maritime insurance litigation.

All Underwriters v. Weisberg, 222 F.3d 1309, 1314 (11th Cir. 2000) (citing Robertson). The same reasoning has also been adopted by state courts in Alaska:

> Therefore, we disagree with the mariners that it is characteristic of admiralty law to prohibit attorney's fees. Rather, it is characteristic of the "American Rule" which predominates in most courts where admiralty cases are tried.

Hughes v. Foster Wheeler Co., 932 P.2d 784, 789 (Alaska 1997); and in Washington State:

> All Alaskan relies on Southworth Machinery Co. v. F/V Corey Pride[1], in which the court considered application of an attorney fee provision in the Massachusetts Unfair Trade Practices Law, and concluded maritime law preempted the state fee provision because liability was based on breach of a maritime contract. We are unpersuaded by the Southworth court's analysis, however, for the same reason the Weisberg court was not persuaded by its sister circuits. Like those of the Second Circuit in Kenealy, the authorities relied upon by the Southworth court rely simply on the American rule.

Paul v. All Alaskan Seafoods, Inc., 24 P.3d 447, 457-458 (Wash.App. 2001) (finding both attorneys' fees and double damages provisions of state statute not to be pre-empted by admiralty law). A district court within the Ninth Circuit has also recently adopted the view of Weisberg that there is no general rule of admiralty regarding attorneys' fees. *See* Chiariello v. Ing Groep NV, 2006 A.M.C. 2148 (N.D.Cal. 2006).[2] *See also, e.g.*, Great Lakes Dredge & Dock Co. v.

---

[1] Seahorse also relies on this case.

[2] The Ninth Circuit itself has not addressed this specific question in any published opinion. In an unpublished opinion, Narte v. All Alaskan Seafoods, Inc., 2000 WL 237923 (9th Cir. 2000), it took the position that attorneys' fees were not available in maritime cases. It did so only reluctantly, however, in what it perceived to be the interest of uniformity; and acknowledged the strength of the contrary argument. *See id.* at *4 ("[I]t is hard to see a flat contradiction between the state statute and the American Rule, because the American Rule has always had an exception where statutes provided for attorneys' fees awards."). As the court in Paul pointed out, however,

Comm'l Union Assurance Co., 2000 WL 1898533 *11 (N.D.Ill. 2000) ("Aside from the general 'American rule' of fee recovery, there is no particular federal rule governing the recovery of attorneys' fees in marine insurance disputes. Thus, there is no basis for preempting state law on that issue.").

## CONCLUSION

Since the allowance of a claim against Seahorse under the CNMI Consumer Protection Act would not prejudice any characteristic feature of the general maritime law, and would not unduly interfere with the uniformity of admiralty law, Seahorse's motion to dismiss such claim should be denied.

Respectfully submitted this 14th day of August, 2008.

                              O'CONNOR BERMAN DOTTS & BANES
                              Attorneys for Plaintiff

                              By: _____/s/_____
                                  Joseph E. Horey

---

there is, since Weisberg, no uniformity on this issue. See Paul, supra, at 457 ("In any event, after Weisberg, it certainly cannot be argued that there is a uniform rule prohibiting attorney fees in maritime cases."). The Ninth Circuit itself has since cited Weisberg in support of applying state law regarding the enforcement of a contractual liquidated damages clause in an admiralty case. See Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., 1 Fed.Appx. 757, 759 (9th Cir. 2001) ("[A]pplication of state law to this dispute would not frustrate the national interest in uniformity in admiralty law.").