Richard W. Pierce
Richard W. Pierce, Law Office, LLC
P.O. Box 503514
Saipan, MP 96950-3514
Telephone: (670) 235-3425
Facsimile: (670) 235-3427
Attorney for Defendant Seahorse Inc. Saipan

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| LI FENFEN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>SEAHORSE INC. SAIPAN,<br><br>　　　　Defendant. | CIVIL CASE NO. 07-0033<br><br>**SEAHORSE, INC. SAIPAN PRETRIAL CONFERENCE STATEMENT**<br><br>**TRIAL: SEPTEMBER 2, 2008**<br><br>**9:00 A.M.** |

Pursuant to the Court's Orders of March 25, 2008 and May 2, 2008, the Court will conduct a hearing on September 2, 2008 with respect to the following issues:

1.   Whether a negligent act or omission led to Plaintiff's maritime injury and whether Seahorse proximately caused that injury; the burden of proof is on the Plaintiff.

2.   If liability is found, Seahorse has the burden of proof that its managerial employees[1] lacked privity or knowledge of the conditions that caused the injury. "[P]rivity means 'some fault or neglect in which the owner personally participates,' and knowledge

---

[1]   Because Seahorse Inc. Saipan is a corporation, the "knowledge" requirement refers to the knowledge of the executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred. *See Coryell v. Phipps*, 317 U.S. 406, 410, 63 S. Ct. 291, 293 (1943).

-1-

means 'some personal cognizance, or means of knowledge, of which the owner is bound to avail himself'" that caused the loss. *Wiley v. Hobbs*, 71 F.2d 889, 894 (9th Cir. 1934).

Seahorse anticipates that five witnesses will testify: the Plaintiff, the Seahorse operator of the jet-ski at the time of the injury (Hua Zhang), Seahorse officers Ms. Shao Hong Walker, Mr. Manuel Alvarez and the Seahorse shore supervisor Mr. Banga Bandhu Baidya, aka Bongo.

Seahorse anticipates that the evidence will show that Ms. Li rode on the back of a three-person jet-ski with Mr. Zhang as he went to retrieve buoys and that she fell off the ski, possibly as Mr. Zhang turned it.[2] When she fell, she pulled Mr. Zhang into the water with her. The ski did not topple, as Ms. Li appears to believe. The jet-ski at issue is extremely stable. However, because a general risk of falling and coming into contact with water is inherent in jet skiing, occupants wear a life vest as Ms. Li did.

Two persons on a three-person jet-ski is not at all unusual, even for first time operators and passengers. The jet-ski business is designed for tourists that have never ridden a jet-ski.

The evidence will show that Mr. Zhang had more than a year's experience operating jet skis, both solo and with others. Mr. Alvarez and Mr. Baidya, both with years of jet-ski experience, guided him through the Seahorse operations and found him competent. If Mr.

---

[2] Ms. Li worked as a masseuse for a company related to Seahorse and was at the seaside operation behind La Fiesta Hotel waiting on a ride back to her place of employment.

1  Zhang negligently operated the jet-ski during navigation, Seahorse management could not
2  reasonably have anticipated it.
3
4      Seahorse may use photographs as exhibits to show the Court the jet-ski course
5  layout and the type of jet-ski at issue.
6      A proposed finding of fact and conclusions of law follows on the next page.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Proposed Findings of Fact and Conclusions of Law**

1.      Seahorse Saipan, Inc., is a CNMI corporation that operates a jet-ski and other water sports businesses on Saipan, CNMI, on the lagoon side of the island behind the La Fiesta Hotel. The lagoon is a navigable waterway with the jurisdiction of the United States of America.

2.      Seahorse caters to the tourists trade, many of whom are first time users of jet-skis.

3.      At all relevant times, Seahorse used Yamaha XL 700 jet-skis in its business. These machines are built for three persons to ride at once.

4.      On or about April 29, 2007, the Plaintiff Li Fenfen went to the Seahorse pavilion behind La Fiesta to wait for a ride back to her work. She works for a company that is related by ownership and management to Seahorse.

5.      While waiting for her ride, either she or a Seahorse staff member initiated the idea of Ms. Li riding a jet ski. She agreed to ride with a fellow Chinese speaker Hua Zhang, an employee of Seahorse. Seahorse shore supervisor Mr. Banga Bandhu Baidya gave Mr. Zhang permission to take Ms. Li for a ride on the ski when Mr. Zhang went to bring the course buoys into shore.

6.      Mr. Zhang had worked for Seahorse about two weeks on jet-skis, but had a year's experience in China operating jet skis. Plaintiff maintains that Seahorse employed him unlawfully under CNMI law, but even if so, that is not a consequence for the issues before the Court.

7. Two Seahorse managers, Mr. Manuel Alvarez and the Seahorse shore supervisor Mr. Baidya both had the opportunity to work with Mr. Zhang and to see him operate jet skis. Both had years of experience with jet-ski operations and believed Mr. Zhang to be competent. He never gave either of them a reason to doubt his competency.

8. Mr. Zhang had the duty to instruct jet-ski riders on how to operate the jet-ski and to guide operators and riders around the course under his instructions.

9. Before taking Ms. Li for a ride, Mr. Zhang had her wear a life jacket and said that she could either sit in front of him or ride behind and hold onto him. She chose the latter.

10. The purpose of the trip was for Mr. Zhang to retrieve the buoys in the lagoon that marked the Seahorse jet-ski course.

11. While the testimony is somewhat unclear, Ms. Li fell off from the passenger's position on the jet-ski. When she fell, she pulled Mr. Zhang with her into the water.

12. At some point during the fall, Ms. Li broke her left arm.

13. The jet-ski did not turn over. Mr. Zhang swam to the jet-ski and came back on the ski and hoisted Ms. Li on to it. He carried her to shore, and she was transported to the local hospital for initial treatment.

14. After Ms. Li filed her claim in this court, Seahorse timely counterclaimed for Limitation of Liability and placed a cash bond in the amount of $7,996.00 with the Court. Plaintiff does not dispute that the posted bond covers the value of the jet-ski vessel.

15. A shipowner owes a reasonable duty of care to a passenger. *See Craig v. M/V Peacock on Complaint of Edwards*, 760 F.2d 953, 955 (9th Cir. 1985) ("the only duty owed him by Shipowners was that of exercising due care under the circumstances"); *In re Catalina Cruises, Inc.*, 137 F.3d 1422, 1425 (9th Cir. 1998) (a shipowner owes a duty of reasonable care to those aboard the ship who are not crew members).

16. Plaintiff offered no expert testimony that Mr. Zhang operated the jet-ski unsafely with Ms. Li riding as a passenger. He gave her an option of where to sit and told her to hold on to him. She held onto his life jacket.

17. Mr. Alvarez and Mr. Baidya testified that operating a jet-ski at 35 mph is not unusual and that tourist operating a jet ski for the first time often run the ski over 35 mph with passengers.

18. Mr. Zhang knew to slow down a jet-ski for a turn.

19. Generalized statements that "it is safe" or "you will be all right" do not amount to a warranty that nothing will occur that could injure a rider. There is an inherent risk in falling into the water from a jet ski, which is why riders and passengers wear life jackets.

20. While Ms. Li might have told Mr. Zhang to slow down, he was slowing when she fell off the ski, and the estimated speed he was traveling is not per se negligent for the circumstances.

21. Even should Mr. Zhang have slowed down, that was his navigational decision. The managers of Seahorse, including the on-site supervisor, Mr. Baidya, had no reason to believe that Mr. Zhang would not operate the jet-ski prudently under the circumstances. There is nothing about Mr. Zhang's background that would lead Seahorse managers to believe that he would operated a jet-ski in anything other than a competent manner.

For the foregoing reasons, the Court grants judgment to the Defendant on Plaintiff's first cause of action. Each party will bear its own costs and fees, there being no finding of bad faith by either party. Seahorse's bond is exonerated, and the Clerk shall pay the full amount of the bond to Seahorse. The Clerk shall enter judgment consistent with this decision and the order finding judgment in favor of Defendant on the second claim for relief.

Respectfully submitted this August 28, 2008.

RICHARD W. PIERCE LAW OFFICE, LLC

_____/s/_____
Richard W. Pierce
Attorney for Seahorse Inc. Saipan